UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DAVID LOUIS PEARSON,                                                            PLAINTIFF


V.                                              CIVIL ACTION NO. 1:20-CV-166-HSO-RPM


COMMISSIONER OF
SOCIAL SECURITY,                                                              DEFENDANT


## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

On May 8, 2020, plaintiff David Louis Pearson ("Pearson") filed this action under 42 U.S.C.

§ 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security

("Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the

Social Security Act ("SSA") as well as denial of his claim for supplemental security income

("SSI") under Title VI of the SSA. Doc. [1].

### II.      Procedural History

On December 13, 2017, Pearson filed for DIB on the basis of a back injury. Doc. [12], at 195–

96, 213. Days later, on December 20, 2017, Pearson filed for SSI on the basis of blindness or low

vision. *Id.*, at 197–202, 324. At the time of filing, Pearson was 37 years old with a history of

polysubstance abuse, lived with his parents and had a high school diploma. *Id.*, at 76, 352. He has

previously worked as a welder, carpenter, and, most recently, an elevator installer. *Id.*, at 244.

Pearson's applications were consolidated by the Social Security Administration

("Administration"), which denied his application initially and upon reconsideration. *Id.*, at 116–

25. Thereafter, Pearson requested an in-person hearing before an Administrative Law Judge

("ALJ"). *Id.*, at 168–69. On May 8, 2019, Pearson had a hearing in front of an ALJ. *Id.*, at 68–97. On June 17, 2019, the ALJ ruled that Pearson was neither entitled to DIB nor SSI. *Id.*, at 21–30. Thereafter, Pearson filed a timely appeal to the Appeals Counsel ("AC"), which denied his request for review, and the appeal, on March 6, 2020. *Id.*, at 5–9. This action, which only raises issues related to Pearson's back, followed. Doc. [1, 13].

### III.   Relevant Facts

#### A. General

On June 30, 2017, Pearson was admitted to Forrest General Hospital ("FGH") with "severe back pain." Doc. [12], at 346, 349, 353–54. After CT scan and an MRI were performed on Pearson, Ali Shahshahan, MD ("Dr. Shahshahan") determined that he was suffering from a psoas muscle abscess, L3/4 discitis, and osteomyelitis due to methicillin-sensitive Staphylococcus aureas. *Id.*, at 348–49, 353. Dr. Shahshahan did not recommend surgery and prescribed antibiotics instead; Pearson, however, remained hospitalized. *Id.*, at 353, 382. After additional testing, doctors observed the accumulation of fluid involving the vertebral endplates at L3–L4 crossing the disc space as well as Pearson's L3–L4 disc "narrow[ed]" in a manner consistent with "new or worsening" discitis. *Id.*, at 381–82, 384. On August 11, 2017, Charles Brent, MD ("Dr. Brent") performed a left L3–L4 partial laminectomy and discectomy on Pearson. *Id.*, at 355–56. In the L3–L4 disc space, Dr. Brent found "significant necrosis" and noted that the disc itself was "severely" fragmented; he cleared the disc fragments and flushed the disc space with antibiotics. *Id.*, at 355–56. After the surgery, subsequent tests were performed on Pearson's back, which suggested ongoing inflammation and infection, *id.*, at 386–87, though it appears that the infection cleared shortly thereafter, *id.*, at 493. After nearly three months in the hospital, Pearson was finally discharged on September 8, 2017. *See*, *e.g.*, *id.*, at 71–72, 363.

Nevertheless, Pearson continued to experience lower back pain that radiated down his legs and sought further treatment with specialist James Butler, MD ("Dr. Butler") on October 4, 2017. *Id.*, at 390, 493. After an evaluation, Dr. Butler determined that Pearson would benefit from an anterior debridement of the L3–L4 disk space and fusion of those vertebrae. *Id.*, at 390–91, 426. On November 7, 2017, Dr. Butler performed a second surgery on Pearson's back. *Id.*, at 391–92, 528–30. During the surgery, Dr. Butler shaved the disc space up to 14 millimeters and inserted a 14-millimeter Meditronic perimeter trial therein. *Ibid.* A 35-millimeter titanium rod was also anchored between Pearson's L3 and L4 vertebrae. *Ibid.* The surgery was successful.[1] *Id.*, at 390–93, 430, 498.

Pearson made several postoperative visits to Dr. Butler's office.[2] During this time, Pearson generally reported that pain no longer radiated down his legs and that he generally felt less lower back pain than before surgery. *Id.*, at 474, 478–79, 481. While the surgery provided Pearson with some relief from his lower back pain, Pearson continued to report significant lower back pain. *Id.*, at 474, 478, 481, 493, 537. For example, roughly eight months after his second back surgery, Pearson reported that he felt "40% better" than before surgery but still had "some significant pain" and remained "partially permanently disabled to some degree." *Id.*, at 474, 477. Nevertheless, nearly a year after his surgery, Pearson did not report any further improvement in his symptoms and his flexion was "significantly limited" due to pain and guarding. *Id.*, at 537, 540. During this same visit, Dr. Butler opined that Pearson's persistent symptoms indicated that he would continue

---

[1] Michael Andolfi, MD was "cosurgeon" and responsible for the "vascular portion" of the procedure. *Id.*, at 526.

[2] During these visits, Pearson was generally seen by Dr. Butler's physician assistant, Michael A. Beninato ("PA Beninato"). *See*, *e.g.*, Doc. [12], at 474, 492. However, Dr. Butler oversaw PA Beninato's work. *Ibid.* Since there is no material dispute about the postoperative treatment provided by PA Beninato as opposed of Dr. Butler, the Court will simply refer to them collectively as "Dr. Butler." Doc. [13, 14].

to have "some exacerbation of symptomology" and "continue to have some disability due to his chronic pain issues." *Id.*, at 541.

## B. Medical Opinions

### i. Dr. Butler

In 2018 and 2019, Dr. Butler provided three nearly identical "medical opinions," 20 C.F.R. § 404.1513(a)(2), about Pearson, Doc. [12], at 533–36, 551–52. He diagnosed Pearson with lumbar disc disease and L3–4 anterior/posterior lumbar interbody fusion. *Id.*, at 551. According to Dr. Butler, Pearson's symptoms interfered with his attention and concentration in performing simple work-related tasks "between frequent[ly] and constant[ly]." *Ibid.* Furthermore, he opined that Pearson would need to recline or lie down "in excess of" typical work breaks as well as take unscheduled breaks for 30 to 45 minutes every one or two hours. *Id.*, at 551–52. Finally, he opined that Pearson was capable of (i) walking two to three city blocks without significant pain; (iii) sitting for three hours; (iv) standing and/or walking for two hours; (v) frequently lifting less than 10 pounds; (vi) occasionally lifting 10 pounds; (vii) never lifting more than 10 pounds; and (viii) would likely be absent three to four times per month due to his symptoms. *Ibid.*

### ii. Louis Saddler, MD

On March 11, 2018, non-examining physician Louis Saddler, MD ("Dr. Saddler") reviewed the available medical records and formed his own medical opinion. Doc. [12], at 28, 106–7; 20 C.F.R. § 404.1513(a)(2). In relevant part, Dr. Saddler first opined that Pearson did not have any medically determinable impairments and, therefore, he did not consider Pearson's symptoms. Doc. [12], at 108. Nevertheless, he further opined that Pearson had a decreased range of motion, though no "motor deficits," and had exertional limitations. *Id.*, at 108. In particular, Pearson was limited to (i) occasionally lifting 20 pounds and frequently lifting 10 pounds; (ii) occasionally stooping

4

and crawling; (iii) standing and/or walking around for about 6 hours of an 8 hour workday; and (iv) sitting for about 6 hours of an 8 hour workday. *Id.*, at 109–10. However, Pearson was not limited in pushing and pulling, kneeling, climbing ramps/stairs. *Ibid.* Dr. Saddler further opined that Pearson had no substance abuse issues. *Id.*, at 110. Ultimately, Dr. Saddler opined that Pearson was "not disabled." *Ibid.*

### iii.      Carol Kossman, MD

After Pearson sought reconsideration of his claims, on July 17, 2018, Carol Kossman, MD ("Dr. Kossman") reviewed the available medical records and formed her own medical opinion. Doc. [12], at 28, 117–21, 125; 20 C.F.R. § 404.1513(a)(2). Dr. Kossman determined that Pearson had one medically determinable impairment, "disorders of the back," which she deemed "severe." *Id.*, at 123. Unlike Dr. Saddler, Dr. Kossman considered Pearson's pain symptoms and concluded that his pain was grounded in objective medical evidence. *Ibid.* Like Dr. Saddler, she also opined that Pearson did not suffer from substance abuse issues. *Id.*, at 124. Ultimately, Dr. Kossman concluded that Pearson was not limited to unskilled labor and was capable of "light" work, including as a box selling inspector, final inspector, and inspector. *Ibid.*

### IV.      ALJ's Opinion

In his opinion, the ALJ made the following findings of fact. First, the ALJ concluded that Pearson has not engaged in substantial gainful activity since June 29, 2017. Doc. [12], at 21. The ALJ further found that Pearson suffered from one "severe" medical impairment: lumbar degenerative disc disease. *Id.*, at 23.[3] Next, the ALJ concluded that Pearson did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at 24. Then, the ALJ

---

[3] The ALJ also determined that his vision impairment was medically determinable, but not "severe." *Id.*, at 24.

determined Pearson's residual functional capacity ("RFC"). *Id.*, at 24–28. He concluded that Pearson was capable of performing "light work, as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967[.]" *Id.*, at 24. However, the ALJ also indicated that Pearson could only "occasional[ly] stoop[], kneel[], crouch[,] and crawl[,]" and was unable to "climb[] ladders, or [be] expos[ed] to unprotected heights or dangerous machinery." *Ibid.*

Thereafter, the ALJ concluded that Pearson could not return to his past relevant work. Doc. [12], at 29, 244. At step five, the ALJ found that Pearson was a "younger" individual, aged 15–44, because he was 37 years old when he filed for DIB and SSI. *Ibid.* Further, the ALJ found that Pearson has a high school education and can communicate in English. *Ibid.* Thereafter, the ALJ noted that job skill transferability was not material to determining disability because use of the VE rules as a framework supports a finding that Pearson is "not disabled," whether or not he has transferable job skills. *Ibid.* Finally, the ALJ concluded that, considering Pearson's age, education, work experience, and RFC, there are jobs that exist in significant numbers, around 40,000, in the national economy that he can perform, including as a ticket taker, ticket seller, and order caller. *Id.*, at 30. Thus, the ALJ concluded that Pearson was not "disabled" under the SSA. *Ibid.*

## V.    <u>Standard of Review</u>

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —— U.S. ——, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance.'"

*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## VI.   Five-Step Process Generally

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

# VII.   ANALYSIS

## A.  Did the ALJ Err by Failing to Sufficiently Explain the Persuasiveness of the Medical Opinions in his RFC Determination?

### i.      RFC Generally

The ALJ is responsible for determining a claimant's RFC, *Ripley*, 67 F.3d at 557, which represents "an individual's ability to perform activities despite the limitations imposed by an impairment," *Brown v. Barnhart*, 372 F. Supp. 2d 957, 974 (S.D. Tex. 2005) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990)). The ALJ's RFC determination "is based upon '*all* of the relevant evidence in the case record,' including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.'" *Gray v. Astrue*, No. 1:09–CV–0101–BI, 2011 WL 856941, at *5 (N.D. Tex. Mar. 11, 2011) (quoting Soc. Sec. Ruling 96–8p (July 2, 1996) (emphasis in original)). As such, the ALJ must consider subjective complaints of pain, *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991), but he may also discount subjective complaints as inconsistent with other evidence in the record, *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (per curiam).

### ii.      Evaluating Medical Opinions

Since Pearson filed for SSI and DIB "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. § 404.1520c. Through the new regulations, the Administration revised the procedures and standards for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c(a). As such, ALJs are "no longer required to give controlling weight" to the opinions of treating physicians. *See*, *e.g.*, *Pearson v. Commissioner*, No. 20–CV–

3030 (AMD), 2021 WL 3373132, at *4–*5 (E.D.N.Y. Aug. 3, 2021). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) "other factors that tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In considering these factors, the ALJ is required to "*explain how* [h]e considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [Pearson's] determination or decision." *Id.* (emphasis added).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20–CV–00261–RAK–HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1)). *See also* Revision to Rules, 82 Fed. Reg. at 5853. The regulations provide that "consistency" is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2)). *See also* Revision to Rules, 82 Fed. Reg. at 5853.

Considering the newness of the regulations, there is a dearth of caselaw concerning what constitutes a sufficient "explanation" of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2). *See*, *e.g.*, *Moore v. Saul*, No. 3:20–CV–48–DPJ–MTP, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021). Nevertheless, the Administration's explanation of the new regulation sheds some light the issue. According to the Administration, it eschewed the treating physician rule because "the healthcare delivery system has changed in significant ways" since 1991 (when the treating physician rule was implemented) insofar as "[m]any individuals receive

9

health care from multiple medical sources, such as from coordinated and managed care organizations, instead of from one treating [physician]." Revision to Rules, 82 Fed. Reg. at 5853. Stated differently, individuals "less frequently develop a sustained relationship with one treating physician" today. *Ibid.* As such, the Administration has found that "the two most important factors for determining the persuasiveness of medical opinions are consistency and supportability" and focusing analysis of those factors "help[s] eliminate confusion about a hierarchy of medical sources and instead focus[es] adjudication more on the persuasiveness of the content of the evidence." *Ibid.*

By contrast, under the old regulations, a treating physician's opinion was given controlling weight and could only be rejected "if the ALJ performs a *detailed analysis* of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 454 (5th Cir. 2000) (emphasis added). An ALJ's insufficient explanation for departing from that medical opinion was grounds for reversal. *Ibid.* While the new regulations eschewed "hierarchies of medical sources" and are not meant to "make evaluating evidence more difficult," Revision to Rules, 82 Fed. Reg. at 5853, it is clear that an ALJ's sufficient explanation of the supportability and consistency of medical opinions is still a critical portion of the analysis. To be sure, the ALJ is no longer required to undertake a similarly detailed analysis in rejecting a treating physician's medical opinion as persuasive. Cf. *Newton*, 209 F.3d at 454. Therefore, adequate discussion of medical opinion persuasiveness is important.

Likewise, other courts to address the issue have come to a similar conclusion, but they have been divergent about how exactly to measure the sufficiency of an ALJ's explanation when there is at least some mention of medical opinion persuasiveness. *Compare Harris v. Saul*, No. 19–CV–03715–NRN, 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021), *with Todd v. Comm'r of Soc. Sec.*,

No. 3:20–CV–1374, 2021 WL 2535580, at *9 (N.D. Ohio June 3, 2021), *report and recommendation adopted*, No. 3:20–CV–1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021). Most courts to address the issue appear to require the ALJ to provide a sufficient explanation of consistency and supportability to allow the court to undertake a meaningful review of whether his reasoning was supported by substantial evidence, *see*, *e.g.*, *Ramirez v. Saul*, No. SA–20–CV–00457–ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021); *Todd*, 2021 WL 2535580, at *9; *Burba v. Comm'r of Soc. Sec.*, No. 1:19–CV–905, 2020 WL 5792621 (N.D. Ohio Sept. 29, 2020), and do not leave the Court to merely speculate about reasons behind the ALJ's persuasiveness finding or lack thereof, *see*, *e.g.*, *Moore*, 2021 WL 754833, at *3; *Ramirez*, 2021 WL 2269473, at *6. Stated differently, there must be a discernible "logic bridge" between the evidence and the ALJ's persuasiveness finding. *Ramirez*, 2021 WL 2269473, at *6. Therefore, while the length of explanation need not be profound, *see*, *e.g.*, *Vaughn v. Comm'r of Soc. Sec.*, No. 20–CV–1119–TMP, 2021 WL 3056108, at *9 (W.D. Tenn. July 20, 2021) (finding detailed three sentence explanation sufficient to be considered an explanation),[4] the ALJ must do more than pay lip service to the regulation without *substantively* engaging with the supportability and consistency of medical opinions in any detail whatsoever, *see*, *e.g.*, *Howard D. v. Saul*, No. 5:19–CV–01615 (BKS), 2021 WL 1152834, at *12 (N.D.N.Y. Mar. 26, 2021). In other words, the ALJ cannot summarize the entire record and summarily conclude that, in light of that record, one medical opinion is persuasive and the other is not persuasive. *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19–CV–1313 (ATB), 2021 WL 706645, at *10 (N.D.N.Y. Feb. 22, 2021). That is, however, exactly what the ALJ did in this case.

---

[4] *See also Jacqueline L. v. Comm'r of Soc. Sec.*, No. 6:19–CV–06786 EAW, 2021 WL 243099, at *6 (W.D.N.Y. Jan. 26, 2021) (detailed persuasiveness explanation of physician's medical opinion was plainly sufficient).

### iii.    Application

Here, the ALJ failed to provide a discernible relationship between the evidence and the medical opinions that he allegedly considered in his opinion. To begin with, the lion's share of the ALJ's opinion was committed to simply restating the facts. Doc. [12], at 24–28. After summarizing the facts, the ALJ appeared to give controlling weight to Pearson's hearing testimony rather than the medical opinions, though it is not abundantly clear. *Id.*, at 28. Thereafter, the ALJ's total discussion of consistency and supportability was as follows:

> The non-examining state agency physicians in Exhibits 1A, 2A, 7A, and 8A determined that the claimant was capable of light exertion with occasional stooping and crouching. These opinions are deemed persuasive, as they are consistent with and supported by the evidence of record at that time. However, subsequent evidence received at the hearing level in Exhibit 5F–10F support the need for additional non[-]exertional limitation as reflect[ed] in the residual functional capacity.

> Physician assistant Beninato for Dr. Butler in Exhibits 5F, 6F, and 9F determined that the claimant had limitations that were essentially consistent with disability. These opinions are deemed not persuasive, as they are inconsistent with their own examination results and the remainder of the record. They are also inconsistent with Dr. Butler's statement following the April 5, 2019[] visit that the claimant could do "light duty." (Exhibit 10F).

> [*Ibid.*]

The ALJ did not discuss in any detail whatsoever why he found the non-examining, non-treating physician medical opinions to be persuasive. These medical opinions, however, were the only ones on record supporting his RFC determination.[5] The only other "medical opinions" belonged to Dr. Butler and were "essentially consistent" with a finding that Pearson was legally disabled. *Id.*, at 28. In turn, the ALJ's failure to explain why he found Dr. Saddler and Dr. Kossman's opinions to

---

[5] At the hearing, the ALJ asked the Vocational Expert ("VE") whether any jobs were available in the economy if Pearson' had the limitations set forth in Dr. Butler's medical opinion. Doc. [12], at 28, 95–96. The VE concluded that Pearson would be unable to perform any job in the national economy with those limitations. *Ibid.*

be persuasive plainly affects Pearson's "substantive rights." *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448–49 (5th Cir. 2007).[6]

   To be sure, the Commissioner provides the Court with several potential reasons that support the ALJ's persuasiveness findings. Doc. [14], at 13–15. For example, the Commissioner points out that Dr. Butler concluded that Pearson's condition had improved 40% and he no longer had neurological symptoms after his surgery. *Id.*, at 13. Likewise, the Commissioner points out that Pearson elected to undergo back surgery with Dr. Brent, even though the evidence only suggested an infection treatable with medication. *Id.*, at 14. The Court does not dispute that this evidence *may* have played a role in the ALJ's determination that the non-examining physician medical opinions were persuasive. However, it is neither the role of the Commissioner nor this Court to supply *post hoc* rationalizations for the ALJ's conclusions. *Ramirez*, 2021 WL 2269473, at *6 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). *See also Moore*, 2021 WL 754833, at *3 (noting that the Court cannot speculate about the ALJ's reasons for reaching a particular conclusion).

   It is well-established that a reviewing court must be provided "with a sufficient explanation to ensure that the[] [ALJ] ha[s] complied with the legal procedures controlling [his] decision and [did] not ignore or mischaracterize evidence." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20–CV–0502–AJN–KHP, 2021 WL 363682, at *15 (S.D.N.Y. Jan. 29, 2021). *See also Ramirez*, 2021 WL 2269473, at *6. The Court cannot undertake a meaningful review of the ALJ's consideration of the non-examining, non-treating physician opinions in this case because he merely provided the Court with a summary statement that their respective opinions were consistent and supported by the record. Doc. [12], at 28. This is not enough. These medical opinions were far from peripheral

---

[6] While the Court has concerns whether that the ALJ sufficiently explained Dr. Butler's medical opinion in light of his significant relationship with Pearson, the Court need not address that issue here.

or merely cumulative and formed the basis of the ALJ's RFC determination. Without these supporting opinions, the only other medical opinion supported a finding of disability—which the ALJ himself conceded, Doc. [12], at 28. Furthermore, the ALJ's failure to discuss persuasiveness is not merely a drafting mistake. He supplies no logical connection between his factual recitation, brief discussion of Pearson's hearing testimony, and his sweeping conclusion that the non-examining physician medical opinions "are consistent with and supported by the evidence of record at that time." Doc. [12], at 28. In short, "[w]ithout an[] explanation from the ALJ, it is impossible for the Court to determine whether . . . [his] finding is supported by substantial evidence." *Ramirez*, 2021 WL 2269473, at \*6 (citing *Harmon v. U.S. Comm'r*, No. 6:14–cv–02660, 2015 WL 9226138, at \*7 (W.D. La. Nov. 17, 2015)).

Ultimately, the failure to put forth any reasons why the only two medical opinions that supported the RFC were persuasive was not harmless error. No substantive discussion whatsoever was provided as to why the non-examining, non-treating physicians' opinions were found to be persuasive. These medical opinions were the only opinions supporting the ALJ's RFC determination and, therefore, critical to his determination that Pearson was able to do "light work." While these medical opinions were clearly important, the Court cannot meaningfully review whether substantial evidence supported his persuasiveness decision because it would be required to engage in wholesale speculation. *Ramirez*, 2021 WL 2269473, at \*6. For these reasons, remand is required.[7]

---

[7] Since remand is appropriate, the Court does not reach the remainder of Pearson's arguments. *See*, *e.g.*, *Morgan v. Colvin*, 803 F.3d 773, 775 (5th Cir. 2015). *See also Huelster v. Soc. Sec. Admin.*, No. CV 14–2399, 2015 WL 9581394, at \*4 n.1 (E.D. La. Oct. 23, 2015), *report and recommendation adopted*, No. CV 14–2399, 2015 WL 9478129 (E.D. La. Dec. 29, 2015)

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the case remanded for further proceedings.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 11th day of August 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE

15